IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      )
                              )
        v.                    )      Criminal No. 10-236
                              )
ERIC E. NELSON                )

**UNITED STATES' SENTENCING MEMORANDUM
AND RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR VARIANCE**

AND NOW comes the United States of America, by its
attorneys, David J. Hickton, United States Attorney for the Western
District of Pennsylvania and Jessica Lieber Smolar, Assistant
United States Attorney for said District and respectfully submits
the following Sentencing Memorandum and Response in Opposition to
Defendant's Motion for Variance.

**I.  INTRODUCTION**

The defendant, Eric E. Nelson, paid for Internet
subscriptions for child pornography from a website expressly named
ILLEGAL.CP and possessed visual depictions of children engaged in
sexually explicit conduct on his computer and hard drives dating
back to 2003 and 2004.  On December 10, 2010, an information was
filed against Defendant Nelson charging him with one count of
Possession of Material Depicting the Sexual Exploitation of a
Minor, in violation of 18 U.S.C. § 2252(a)(4)(B).  Defendant Nelson
waived his right to an indictment and pled guilty to Count One of
the information before this Court on December 22, 2010.  He is

scheduled to be sentenced for this crime on April 28, 2011. On March 25, 2011, Defendant filed a Motion for Variance and Motion for Consideration of Sentencing Factors Pursuant to 18 U.S.C. § 3553. For the reasons set forth below, the government opposes a variance in this case and respectfully submits that a sentence within the applicable guideline range is appropriate.

## II. TITLE 18, UNITED STATES CODE, SECTION 3553(a)

This Court must impose a sentence that is reasonable in light of the factors listed in 18 U.S.C. § 3553(a) (the "Section 3553(a) factors").  In applying the Section 3553(a) factors, the Court must exercise its discretion, while recognizing and responding to all non-frivolous arguments of the parties.  United States v. Jackson, 467 F.3d 834, 841 (3d Cir. 2006).  However, the Court need not discuss each factor if the record makes clear that the Court took all relevant factors into account in imposing sentence.  Cooper, supra, 437 F.3d 329.  Section 3553(a) directs this Court to impose a sentence that is sufficient to account for each of the relevant Section 3553(a) factors, but that is no longer than necessary.

Under the facts of this case, a sentence within the guideline imprisonment range and a fine within the guideline range, followed by a period of supervised release, should be imposed to sufficiently account for each of the Section 3553(a) factors discussed below.

**A.    The Nature and Circumstances**
**of the Offense (3553(a)(1))**

The nature and circumstances of the offense are extremely serious.  Eric E. Nelson possessed and received approximately 462 files (279 images and 183 videos) that depicted the sexual victimization of children.  He paid for subscriptions to a child pornography website, ILLEGAL.CP, whose name alone plainly conveyed the contraband nature of its content even before full access was obtained.  The images that Nelson collected are severe, and contain sadistic and masochistic depictions of violence against children and toddlers as young as 2 or 3, and  prepubescent minors between the ages of aged 5 and 12.  In fact, 11 images depict a prepubescent female bound with duct tape wrist to ankle displaying her vaginal area, as well as being vaginally fondled and anally and vaginally penetrated. One or more of the videos depict a prepubescent a female being anally penetrated by an adult male. One video depicts an underage female handcuffed and forced to have sex with two males. Some of the images of child pornography date back to 2003 and 2004.

The crime of conviction for Eric E. Nelson, possession of child pornography, is not a victimless crime, and consideration of victim impact is therefore appropriate. (Specific impact statements for certain child victims have been provided to the Court by Probation).  One child victim, in her impact statement, writes that

she is "living everyday with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them ... Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways."  She continues, "I will never be able to control who sees me raped as a child.  It's all out there for the world to see and it can never be removed from the internet.  I only ask that those who have exploited me be brought to justice to hopefully defer some others from doing the same and to lessen my shame."

Congress has explicitly recognized that child pornography offenses are "crimes of violence."[1]  Congress understood that the children used in the production of child pornography were the "primary victims" when it passed legislation prohibiting the sexual abuse and exploitation of children through pornographic means. United States v. Boos, 127 F.3d 1207, 1210 (9th Cir. 1997). Congress' legislative history for 18 U.S.C. § 2252 states that the statute "was born out of a 'deep and abiding concern for the health and welfare of the children and youth of the United States,' and was enacted in order 'to protect and benefit such children.'" Id.

---

[1]  18 U.S.C. § 3156(a)(4) states: the term "crime of violence" means- (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 109A, 110, or 117.

at 1211 (citing S. Rep. No. 95-438, at 40 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 43).

The Senate Report specifically condemned what it saw as "base and sordid activities which may permanently traumatize and warp the minds of the children involved." Id. Continuing, the Report elaborated that "encounters [of child pornography] cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future." Id. Finally, the Report referred on numerous occasions to child pornography as a "form of child abuse." Id. Files that depict child pornography are increasingly vivid documentation of the actual sexual assault of children by adults, which may or may not have been produced for commercial gain.

When Congress enacted the Child Pornography Prevention Act of 1996, it found that the mere existence of pornographic materials containing children, as well as their distribution, "creates the potential from many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children," which leads to the abuse and exploitation of children as creation and production of additional pornographic material is needed. S. Rep. No. 104-358, § 2 (10)(A)(B). Similarly, the United States Supreme Court found that child pornography laws aim to protect the children themselves from

sexual exploitation and abuse. <u>New York v. Ferber</u>, 458 U.S. 747, 757 (1982).

The Court of Appeals for the Third Circuit articulated, "Children are exploited, molested, and raped for the prurient pleasure" of those who collect child pornography "who support suppliers of child pornography... Their injuries and the taking of their innocence are all too real. There is nothing 'casual' or theoretical about the scars they will bear from being abused for [collectors'] advantage." <u>United States v. Goff</u>, 501 F.3d 250, 259 (3d Cir. 2007). "The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. 'The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" <u>Goff</u>, 501 F.3d at 259 (citing <u>New York v. Ferber</u>, 458 U.S. 747, 759 (1982)). In explaining its jurisprudence on the subject of child pornography crimes, the Supreme Court has recognized that "as a permanent record of a child's abuse, the continued circulation" of child pornography images harms the child victims, and "[l]ike a defamatory statement, each new publication... cause[s] new injury to the child's reputation and emotional well-being." <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234, 249-50 (2002).

In a case such as this, with images that depict the sexual assault of children, the primary **victims** are the children

depicted.  United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547-48 (7th Cir, 2001).  As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy." Id.  As the Court stated in Shutic, "children .. suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret .. concern for the welfare of the children who are used to create pornography is part of the public concern over child pornography." Shutic, at 1126. (citations omitted).

The Sixth Circuit has likewise held that using children to produce graphic sexual images is a form of sexual abuse which can cause mental and physical harm to a child.  United States v. Champion, 248 F.3d 502, 506 (6th Cir. 2001).  "The 'victimization' of the children involved does not end when the camera is put away." United States v. Norris, 159 F.3d 926, 929 (5th Cir. 1998).  The consumer of child pornography contributes to the harm to victims who are the subject of child pornography: (1) the abuse is perpetuated through instantaneous and world-wide dissemination, (2) the existence of the image is a permanent violation of the child's privacy, and (3) the demand for the creation of more images is fueled by the consumer.  Norris, 159 F.3d at 929-30.  Consumers of child pornography, whether or not they are involved in production, contribute to the cycle of abuse and are in part responsible for

the psychological and physical harm of the children used to produce the images. <u>United States v. Yeaple</u>, 605 F. Supp. 85, 86 (M.D. Pa. 1985), <u>see</u> <u>also</u>, <u>Ferber</u>, 458 U.S. at 759.

     **B.   History and Characteristics**
          **of the Defendant (3553(a)(1))**

This defendant has no criminal history, a work history and several other characteristics that mitigate in his favor. However, it is of concern that the Defendant does not appear to grasp the gravity of his situation and the necessity of pre-sentence investigation process. He actually wrote "you're a pain in my ass!" on records that he was requested to provide to the U.S. Probation Officer for completion of the Pre-Sentence Investigation Report. <u>See</u> Paragraph 58 of Pre-Sentence Investigation Report. Similarly, it appears that Defendant hoped to avoid the imposition of a fine in this case by failing to include monetary gifts on his financial forms submitted to the U.S. Probation Officer, yet reportedly stated to two different pretrial officers that he received a few monetary gifts of $250,000 from his father in the past but declined a gift of $500,000 from his father because he believed that said gift would result in him paying a fine. <u>See</u> Paragraph 59 of Pre-Sentence Investigation Report.

Of further concern is the fact that Dr. Robert Coufal, a psychologist meeting with Defendant Nelson every two weeks since December 2009 when the search warrant was executed, appears to conclude that Defendant suffers from depression and during those

episodes of depression is vulnerable to viewing child pornography. Dr. Coufal states that "The defendant reported sporadic use of child pornography over the course of several years." See Paragraph 46 of Pre-Sentence Investigation Report. Dr. Coufal's report is problematic for many reasons. First and foremost, it appears that Defendant Nelson has been diagnosed with depression and/or Bipolar Disorder, but admittedly stopped taking medication on his own for his condition(s) "because he did not think that it helped." See Paragraph 45 of Pre-Sentence Investigation Report. Next, Dr. Coufal plainly prepared his report without any review of the evidence of the crime, in the form of the violent images possessed by the defendant or the extensive computer download log from ICE which evidences an excessive amount of 5,286 downloads of child pornography by Defendant Nelson on ILLEGAL.CP for the 90-day period from March 29, 2008 until June 13, 2008. Thus, despite stating the Defendant Nelson was not fully forthcoming in his evaluation, Dr. Coufal accepts at face value the Defendant's professed lack of sexual interest children, and downplays any risk, despite the significant evidence to the contrary on the Defendant's computer.

Finally, Dr. Coufal states that defendant does not appear to have a sustained interest in children. However, it should be noted that Dr. Coufal's evaluation of Defendant Nelson on December 17, 2009 and December 22, 2009, lists in his family background the fact that Defendant Nelson previously married a 16-year old child

9

when he was in his 20's.  (Coufal 12/17/09 and 12/22/09 Evaluation
at pp. 2, 4).  All of the reasons set forth above raise concern on
the part of the government about the prospects for conforming
Defendant Nelson's behavior in the future.

    **C.    Seriousness of Offense, Respect for
the Law, Just Punishment (3663(a)(2)(A))**

Child pornography crimes warrant stringent sentences.  In
<u>United States v. Goff</u>, 501 F.3d 250, 258-60 (3d Cir. 2007), the
Third Circuit Court of Appeals engaged in an extensive discussion
of the need for sentences in these cases to constitute just
punishment and promote respect for the law.  The Court noted:
"Children are exploited, molested, and raped for the prurient
pleasure of [Goff] and others who support suppliers of child
pornography." <u>Id</u>. at 259.  Their injuries are real and consumers
who passively receive or possess their images contribute to their
victimization.  <u>Id</u>.

Indeed, in rejecting an Eighth Amendment challenge to the
child pornography statute, the Third Circuit has explicitly noted
Congress's intent that, regardless of the amount of conduct engaged
in, such offenders are more alike than different in the harms they
perpetrate:

> We do not agree with this use of relativistic
> arguments to diminish the seriousness of his
> offenses.  In evaluating the magnitude of the
> harm caused by child pornography, we defer to
> the findings made by Congress.  The
> congressional findings underlying § 2251

repeatedly stress that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996) (codified as amended at 18 U.S.C. § 2251). Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Id. Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." § 121, 110 Stat. at 3009-27.

United States v. MacEwan, 445 F.3d 237, 249-50 (3d Cir. 2006).

The manner in which Defendant Nelson committed his offense raises serious concerns because he not only contributed to the global child pornography market by collecting the images, he contributed financially through payment of his subscriptions to ILLEGAL.CP, at the very least, to those who profit from producing and trafficking sexual abuse images of children.

### D.  **Deterrence of Others (3553(a)(2)(B)**

Pursuant to Section 3553(a)(2)(B) of the Guidelines, sentences must provide adequate deterrence to others. "The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." United

11

States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), quoted in Goff, supra, 501 F.3d at 261.

There is a critical need for the sentence to deter not only Defendant Nelson but also any others who may be inclined to commit child pornography crimes. Child pornography offenses are most often committed in private settings that are remote from their victims. Such crimes are high-volume offenses that are drastically under reported. In fact, unlike most crime victims, the victims of child pornography offenses, while generally cognizant of the trafficking and collection of their sexual abuse images, are not able to report the time or the location of these crimes to the police. As a result, there is a premium on general deterrence because law enforcement officers, no matter how efficient and dedicated, will never be able to detect, let alone investigate and prosecute, more than a small fraction of the child pornography crimes that are committed. Defendant Nelson's sentence should, therefore, contain a period of imprisonment that not only disinclines him from engaging in further criminal behavior, but also is long enough to disincline others from attempting to commit crimes, particularly crimes against children.

**E.    Protect the Public (3553(a)(2)(C)**

Child pornography consumption correlates strongly to diagnosis of pedophilia. Recidivism rates and research regarding preferential child sex offenders support the stringent sentencing

scheme imposed by Congress.  In fact, in a 2006 study published by Michael C. Seto, James Cantor, and Ray Blanchard, the researchers studied 685 men who received treatment at the Kurt Freund Laboratory of the Centre for Addiction and Mental Health in Toronto, Ontario, for illegal or clinically significant sexual behaviors and concluded that "as a group, child pornography offenders showed greater sexual arousal to children than to adults and differed from groups of sex offenders against children, sex offenders against adults, and general sexology patients.  The results suggest child pornography offending is a stronger diagnostic indicator of pedophilia than is sexually offending against child victims."  Seto, Cantor and Blanchard, "Child Pornography Offenses are a Valid Indicator of Pedophilia," Journal of Abnormal Psychology, Volume 115 (2006).  The finding in this report is consistent with common sense – of all of the things that a person could access, perverse or otherwise, in the online or offline world, a person's decision to access images of children engaged in sexually explicit conduct is a better indicator of that person's preferences than a single incident of hands-on offending that could have been triggered more by opportunity than sexual preference.  This is particularly so when the accessing occurs over an extended period of time and requires the investment of money.

Subsequent study of federally incarcerated child pornography offenders by Dr. Andres Hernandez and Michael Bourke

has underscored the very high rate of offending by individuals who are convicted of "just viewing" child pornography offenses, as labeled by Dr. Hernandez and Bourke. In fact, incarcerated child pornography offenders in an intensive sex offender treatment program disclosed an average of 13.56 victims per offender, for a total of 1,777 victims among 155 convicted offenders. Bourke and Hernandez, "The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders," Journal of Family Violence, 24:183-191 (2009).

Defendant Nelson's child pornography collection suggests that he has a sexual interest in children. His decision to act in a criminal manner upon that sexual interest by accessing and obtaining graphic sexual images of children dating back to 2003 and 2004 is a cause for concern. The concern is amplified by the fact that Defendant Nelson paid for subscriptions to ILLEGAL.CP in the pursuit of this interest, and further that a computer download log from ICE evidences an excessive amount of 5,286 downloads of child pornography by Defendant Nelson on ILLEGAL.CP for the 90-day period from March 29, 2008 until June 13, 2008.

Dr. Robert Coufal's opinion that Defendant Nelson does not have a sexual interest in minors is encouraging and appreciated. The opinion, however, is not convincing on the subject of whether Defendant Nelson has a sexual interest in children and whether he is likely to act upon that sexual interest

in the future.  Dr. Coufal's evaluation of Defendant Nelson appears to have suffered from a limited scope of review and a reliance upon information conveyed by Defendant Nelson in a context that is not at all conducive to full disclosure.  In evaluating Defendant Nelson, Dr. Coufal did not review the content of the child pornography images and videos on Defendant Nelson's computer to reach his conclusion that Defendant Nelson did not have a sexual interest in children.  The content of the sexually explicit images and videos on Defendant Nelson's computer contradicts this sweeping conclusion.  Even if Defendant Nelson is not a pedophile, his behavior was likely motivated by a sexual interest in children. Efforts to deny or ignore this fact will likely hinder future efforts to address the cause of Defendant Nelson's behavior.

### F.  Need to Avoid Sentencing Disparity

The last factor which must be considered here is the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The sentencing guidelines are a direct result of a generally embraced principle that variability in sentencing should be limited.  "The [Sentencing Reform Act] was motivated by a desire on the part of Congress to establish a rational sentencing system to provide for certainty, uniformity, and proportionality in criminal sentencing.  The intent of Congress was to eliminate an 'unjustifiably wide range of sentences [imposed

on] offenders with similar histories, convicted of similar crimes, committed under similar circumstances,' and to recognize differences between offenses."  S.Rep. No. 98-225, at 38, 45-46; United States Sentencing Commission, "The History of the Child Pornography Guidelines" (October 2009).  There is always a need to avoid unwarranted sentencing disparities between similar defendants.

Defendant Nelson committed serious child pornography crimes in a manner that has triggered several fact-based enhancements.  The only way to avoid disparity is to sentence him commensurate with the guideline range for others who have committed the same crimes.  A variance, which has been requested by the defense, risks creating sentencing disparity for other similarly situated defendants.  Dramatic variability in sentencing, despite the similar advisory ranges, reduces the likelihood of deterrence.

Finally, Defendant Nelson requests a variance on the grounds that a two level enhancement for the use of a computer is a redundancy because prosecution of child pornography cases always involves the use of a computer. The United States is aware that this enhancement has been the subject of criticism on occasion in this district because of the frequency of its application. However, despite its frequency of application, the enhancement has particular significance in Defendant Nelson's case because he did not primarily use his computer as merely a storage device for his

child pornography collection.  Defendant Nelson used his computer as the tool by which he subscribed to a child pornography website and then accessed the child pornography images and videos.  In this manner, Defendant Nelson's computer was a frequent portal to the global child pornography market and not simply a storage device. A variance on this basis, therefore, is not warranted.

### G. **Forfeiture**

One custom built CPU, white in color, containing one 80GB Hard Drive (WD800, bearing serial number WMA 8E2810299), and one 120GB Hard Drive (WD1200, bearing serial number WMAKE 2256304) that were used by Defendant Nelson to commit the crime should be ordered forfeited.

### III.  **CONCLUSION**

For the reasons stated herein, in conjunction with all of the facts and circumstances, the government respectfully submits that a sentence of the Defendant within the applicable guideline range is appropriate.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

s/ Jessica Lieber Smolar
JESSICA LIEBER SMOLAR
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500
PA ID No. 65406
jessica.smolar@usdoj.gov