IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,

        vs.

ERIC NELSON,

      Defendant.

_____

Criminal Action

No. 10-236

Transcript of proceedings on May 27, 2016,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

For the Government:      Jessica Lieber Smolar, Esq.

For the Defendant:      Ronald Hayward, Esq.

Court Reporter:      Richard T. Ford, RMR, CRR
                   6260 Joseph F. Weis Jr. US Courthouse
                   Pittsburgh, PA  15219
                   (412) 261-0802

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1    (Proceedings held in open court; May 27, 2016.)

2    THE COURT:  This is a hearing on a motion filed in

3  United States versus Eric Nelson, it is Criminal No. 10-236,

4  where the Defendant is seeking to have access to an additional

5  computer.

6    The Defendant is on supervised release.  He is

7  being supervised by probation officer Peter Gawlinski, and his

8  business involves day trading and he would like to have

9  another computer.

10    Now, the probation office is not in favor of this,

11  so we will have a hearing on this.

12    Would counsel please enter your appearance.

13    MR. HAYWARD:  Ron Hayward for Mr. Nelson,

14  Your Honor.

15    MS. SMOLAR:  Jessica Smolar for the United States,

16  Your Honor.  With me today is Mr. Gawlinski as well.

17    THE COURT:  Mr. Hayward, would you like to go

18  first.  And I would note the Defendant is here as well.

19    MR. HAYWARD:  Yes.  Your Honor, as I mentioned in

20  the motion, Mr. Nelson is a day trader and --

21    THE COURT:  I think the problem is he has several

22  computers already that he has available to him.  I mean, if he

23  had no computer at all and he wanted to get a computer, it's a

24  different story.  I think he has at least two or three

25  computers that he has access to.

1          MR. HAYWARD:  I understand.  The only thing that I
2   think -- at the time I didn't put it in the motion, but I have
3   discussed this with Ms. Smolar and Mr. Gawlinski, are two
4   factors.  One, that is somewhat uncertain at this time is that
5   his wife, Connie Nelson, who is here, may be taking an online
6   graduate degree course.  She doesn't know at this point in
7   time, and I don't want to represent to the Court that she is
8   definitely going to do that, but she would be taking an online
9   course and she would need more computer access than is
10  available.

11          But the primary issue that is certain, but it's not
12  going to occur until the fall, which would be sometime in say
13  September, is that their daughter, Sabrina, who is 15 years
14  old, she's in the Gateway school system in Monroeville, she
15  will be attending cyberschool in September.

16          Now, I have mentioned that to Mr. Gawlinski and
17  Ms. Smolar, and they have said that, well, they have a laptop.
18  But the laptop doesn't work -- it's slowed down because of the
19  equipment placed on the computers --

20          THE COURT:  Why don't they get rid of the laptop
21  and get another replacement computer that is more conducive to
22  what their needs are.

23          MR. HAYWARD:  Well, and that was --

24          THE COURT:  I mean, the problem is, it is just
25  expensive -- one, it is expensive for the Government because

1  now you have multiple devices that we have to track and put

2  the screening capabilities in and for the probation officer to

3  do.  There's been, quite frankly -- and we can get into this

4  if you want -- problems with some of the things that he's been

5  doing.

6          MR. HAYWARD:  I don't want to go there, Your Honor.

7  But I would just say that I don't know the cost for the

8  Government.  I am unaware -- I have no knowledge as to how

9  much it cost them to monitor.  But whatever fees are

10  associated with that installation or monitoring, Mr. Nelson

11  would be willing to pay.  I just want to point that out to the

12  Court.

13          THE COURT:  Ms. Smolar.

14          MS. SMOLAR:  Your Honor, you are correct that the

15  Government opposes this request on a number of grounds.  I

16  will note that this relationship between Mr. Nelson and the

17  probation officer has just begun.  His term of supervised

18  release is 25 years and we are just at the very beginning.

19  Already there are very significant issues.

20          The main reason that this request is something that

21  that we oppose is that the probation office is already

22  monitoring three devices in the home:  Two desktops, one

23  laptop.  Certainly if his daughter needs a new laptop, there

24  is not a problem with exchanging the laptop -- a new laptop

25  for the one that is currently being monitored.  But at this

1  time three devices is two more than he's technically allowed

2  to have under his computer monitoring agreement.

3       That agreement, which he signed in April 20th of

4  2016, provides that:  I understand that I may only use or

5  possess one Internet capable device computer in my home or at

6  my place of employment unless otherwise authorized by the

7  supervising officer.

8       They have authorized two additional computers.  But

9  now we are asking for a fourth, which, frankly, is extremely

10  time-consuming for the probation officer.

11       Mr. Gawlinski already supervises 54 offenders in

12  ten counties and 40 devices.  So it is extremely

13  time-consuming for him to --

14       THE COURT:  That is beyond the cost of whatever the

15  device cost.

16       MS. SMOLAR:  It's not just a cost issue.  It's time

17  and manpower and being able to properly monitor these sex

18  offenders is something that is important.  So for that

19  reason -- for that reason in addition to a few others the

20  request is beyond the scope.

21       In addition, as you stated, and I am willing to go

22  there because I think this is really important, Mr. Nelson has

23  not been violated at this point.  There has not been a

24  petition filed.  But there, frankly, could have been.  My

25  understanding is that Mr. Nelson did threaten to take a

1    shotgun and blow Mr. Gawlinski's head off.  That is just

2    unacceptable.  It is not something that we are going to be lax

3    about.

4              So right now he has sort of been given a pass on

5    this, but it is certainly informing the decision in this case

6    and will in the future result in a violation of supervised

7    release.  So it is very serious.  I do think it needs to be

8    brought to the Court's attention and dealt with today.

9              THE COURT:  So there appears to be three people

10   residing in the home?

11             MR. HAYWARD:  There is four.  There is two

12   children.  They are both in high school -- one is in college

13   at the University of Pittsburgh, one is in high school at

14   Gateway School District, there's his wife, Connie Nelson, and

15   Mr. Nelson.

16             THE COURT:  So if you have three devices for four

17   people, that's sufficient.  If he needs to upgrade something

18   to make it more suitable for the needs of the family, he will

19   be able to swap one out.  Just make sure before it happens the

20   officer is advised of that.  If there are threats that are

21   made, the Court will take those very seriously.

22             MR. HAYWARD:  I understand that, Your Honor.  I

23   have had discussions with Mr. Nelson and explained to him that

24   it's 2016 and that is totally unacceptable verbiage, and he

25   understands that.  I know from dealing with Mr. Nelson there

1  was no intent there, but I also understand in this day and age

2  anything of that nature is taken seriously, and I have

3  explained that to him and I think he is fully aware of that

4  and there won't be any repeat of that type of behavior.

5          THE COURT:  So I think with the time-consuming

6  nature of the work that would have to be done to monitor an

7  additional one on top of the two that are in addition to the

8  one that would be -- which would generally be the maximum that

9  would be allowed, the Court will at this stage deny that

10  request, subject to the opportunity of the Defendant if he

11  wants to upgrade any of the computers so that it's more

12  conducive to what his needs are and his family's needs.  He

13  will be able to meet and confer with the probation officer --

14  and the officer is shaking his head -- and we do have the

15  remarks of the prosecutor that if he wanted to swap it, that's

16  something that could be done.

17          Thank you.  This hearing is adjourned.

18      (Record closed.)

19

20

21                    C E R T I F I C A T E
                I, Richard T. Ford, certify that the foregoing
22  is a correct transcript from the record of proceedings in the
   above-titled matter.
23  S/Richard T. Ford  _____

24

25